**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa L. Harvey, | No. CV-20-01495-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Teresa Harvey's applications for Social Security disability insurance ("SSDI") and supplemental security income ("SSI") benefits by the Social Security Administration ("SSA"). Plaintiff filed a complaint (Doc. 1) seeking judicial review of the denials and an opening brief (Doc. 19). Defendant SSA Commissioner filed an answering brief (Doc. 21) and Plaintiff filed a reply (Doc. 22). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 18) and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.   Background

Plaintiff filed applications for SSDI and SSI benefits on March 28, 2016, alleging disability beginning on September 30, 2015. (AR 18). Plaintiff's claims were initially denied on August 26, 2016, and upon reconsideration on December 13, 2016. (*Id.*) A hearing was held before the ALJ on October 24, 2018. (*Id.* at 38-78). Plaintiff was 40 years old at the time of the alleged onset date and held relevant previous employment as a

fast food manager, group home manager, and housekeeper. (*Id.* at 44, 71). Plaintiff's applications were denied in a decision by the ALJ on February 25, 2019. (*Id.* at 29). Thereafter, the Appeals Council denied Plaintiff's request for review and this appeal followed. (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: (1) seizure disorder, (2) lumbar spondylosis, (3) cervical spondylosis, (4) degenerative disc disease, (5) sacroiliitis, (6) osteoarthritis of the hips, and (7) a knee impairment. (AR 21). Although the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, including prior jobs as a fast food manager, group home manager, and a housekeeper, and thus was not disabled. (*Id.* at 24, 28).

Plaintiff now raises three assignments of error: (1) the ALJ erred when failing to characterize her mental impairments as "severe" at step two; (2) the ALJ erred when discounting certain medical opinions; and (3) the ALJ erred when discounting her symptom testimony. (Doc. 19).

II.     Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's

decision, the Court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

III. Analysis

    A. **Plaintiff Is Not Entitled To Reversal Based On Her Step-Two Challenge**

Plaintiff's first assignment of error is that the ALJ improperly characterized her mental impairments as non-severe during step two of the analysis. (Doc. 19 at 6-9). The ALJ found that because Plaintiff had "no more than mild limitations" in mental functioning, any mental impairment was not severe. (AR at 22).

Plaintiff is not entitled to reversal on this basis. As this Court has observed in earlier cases, "Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be

disregarded as harmless if the ALJ properly addresses the impairment during later steps. Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify." *Sharp v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1043393, *3 (D. Ariz. 2019) (citations omitted). At any rate, "[t]he dispositive issue . . . is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC." *Id.*

Here, Plaintiff has separately argued—as discussed in Part III.B.1 below—that the ALJ erred by rejecting the mental impairment-related opinions of Dr. Monheim-Janss and failing to incorporate those opinions into the RFC. If Plaintiff prevails on that challenge, she will be entitled to relief irrespective of her claim of step-two error. And if Plaintiff does not prevail on that challenge, any theoretical step-two error was harmless. Either way, Plaintiff's claim of step-two error does not provide an independent pathway to relief. *See also Baca v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1827232, *4 (D. Ariz. 2021) ("Even if the ALJ erred by deeming Plaintiff's fibromyalgia a nonsevere impairment, any such error was harmless. Because the ALJ found that Plaintiff had other severe impairments, the ALJ's evaluation of Plaintiff's claim did not end at step two of the five-step analysis. Further, because the ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment, he was required to include, in Plaintiff's RFC, any limitations stemming from that impairment. Accordingly, any error committed by the ALJ in mischaracterizing Plaintiff's fibromyalgia as nonsevere was inconsequential.").

B.  **The ALJ Erred When Rejecting Some Of The Opinion Evidence**

Plaintiff's second argument of error is that the ALJ improperly rejected the opinions of Dr. Monheim-Janss, an examining doctor, and Dr. Gordon, a physical consultative examiner. (Doc. 19 at 7-11.)

…

…

…

1. Dr. Monheim-Janss

    a. **The Underlying Opinion**

Dr. Monheim-Janss examined Plaintiff on August 10, 2016. (AR 466-74.) The examination report states that Dr. Monheim-Janss based her opinion "on information gathered from [Plaintiff], mini-mental status (MMSE) test results, behavioral observations, and documents that were made available at the time of the evaluation." (AR 466.)

As for behavioral observations, Dr. Monheim-Janss wrote in the report that Plaintiff "appeared clean, casually dressed, and groomed appropriately," that "[e]ye contact was good," and that "[s]ocial skills for communication and interaction appeared to be intact" but also stated that Plaintiff "was observed to be tearful at times when talking about her difficulties." (AR 467.) Dr. Monheim-Janss further stated that Plaintiff "appeared to have no significant difficulty understanding verbal questions and instructions" or "responding to verbal and written instructions," that Plaintiff's "thought content and processes appeared to be logical and appropriate," and that Plaintiff's "concentration and attention appeared to be appropriate for the duration of the interview. She did not appear to become distracted or fatigued. She did not [require] redirection to remain on task or remain on topic. She was able to remain seated during the interview and did not require a break." (AR 467.)

Next, in the portion of the examination report describing Plaintiff's psychological and treatment history, Dr. Monheim-Janss wrote that Plaintiff "reported first being diagnosed with depression at age 13, but did not receive treatment," that Plaintiff "has never received psychiatric or psychological treatment," that Plaintiff "previously reported taking Zoloft for depression for a brief time, but did not continue," that Plaintiff "is not being treated for depression currently," and that Plaintiff "has never attended counseling." (AR 469.)

In the next sections of the examination report, Dr. Monheim-Janss summarized Plaintiff's trauma history, which included a rape and subsequent pregnancy at age 13, and Plaintiff's psychological history, which included that Plaintiff "cries several times a week" and had "endorsed significant depression symptoms lasting for the past 6 years," including

fatigue and concentration issues. (AR 469-70.)

Next, Dr. Monheim-Janss summarized the results of Plaintiff's MMSE exam. (AR 471.) Plaintiff "obtained a MMSE score of 29/30," which was "within the expected range for her age" and was in a range "generally suggestive of no cognitive impairment." (*Id.*)

Dr. Monheim-Janss concluded that Plaintiff's "reported symptoms and presentation are consistent with a diagnosis of Major Depressive Disorder-Moderate, however her presentation is further complicated by an ongoing history or seizure disorder and multiple medications with the potential for side effects." (AR 472,) And in the accompanying disability certification form, Dr. Monheim-Janss opined that Plaintiff had various limitations in the area of "Social Interaction"—specifically, that Plaintiff did not have the ability to "consistently" "get along with co-workers," that Plaintiff did not have the "ability to appropriate respond to supervisors and criticism," and that Plaintiff did not have the "ability to interact appropriately with the public." (AR 473-74.)

b. **The ALJ's Evaluation**

The ALJ assigned only "partial weight" to Dr. Monheim-Janss's opinion. (AR 27.) In the portion of the decision specifically explaining why Dr. Monheim-Janss's opinion was discounted in this manner, the ALJ stated that Dr. Monheim-Janss's "opinion regarding [Plaintiff's] ability to socially interact contracts sharply with the fact that [Plaintiff] continues to assist a girls' basketball coach and successfully completed an adoption process, which would have included an assessment of her mental health and ability to care for children." (AR 27.) Additionally, in the portion of the opinion explaining why Plaintiff's mental impairments should not be considered severe for step-two purposes, the ALJ stated that "throughout the medical evidence, [Plaintiff] is described as cooperative, alert, oriented, well appearing, pleasant, and happy. [Also, Plaintiff] testified that she lived with her four children and she also had her brother's four children and she adopted them. As previously stated, she works part time helping a girl's basketball coach. Given this information, the undersigned finds that [Plaintiff] retains the ability to cooperate well with others and respond appropriately to social cues. Thus, [Plaintiff] has no

limitations in the area of interacting with others." (AR 22-23.)

c. **The Parties' Arguments**

Plaintiff argues that the ALJ's rationale for rejecting Dr. Monheim-Janss's opinion was erroneous. (Doc. 19 at 8-10.) As for her work as a basketball coach, Plaintiff contends it merely shows that she "can work for about 8 total hours per week for a few months of the year (basketball season) amongst familiar people," which "does not negate Dr. Monheim-Janss's opinion that [she] would have difficulty managing her response to trauma triggers when attempting to interact with coworkers, supervisors, or the public *in a competitive work setting*." (*Id.* at 8.) As for the fact that she successfully adopted several children, Plaintiff argues that this, too, does not undermine Dr. Monheim-Janss's opinion because "there is no evidence (and the ALJ cites no evidence) that the adoption process for [Plaintiff's] children involved a psychological examination of [Plaintiff], or that if there was such an examination it yielded results showing [Plaintiff] was unimpaired." (*Id.*)

In response, the SSA Commissioner argues that the ALJ properly categorized Plaintiff's mental impairments as non-severe during step two, and properly discounted Dr. Monheim-Janss's opinion regarding Plaintiff's mental limitations, in light of (1) the presence of other treatment records, psychological examinations, and opinions in the record reflecting the absence of mental impairments; (2) Plaintiff's activities of daily living, including her coaching activity (which "would involve interacting with different children, families, and coaches") and adoption efforts; (3) Plaintiff's failure to seek treatment for her alleged mental impairments; (4) the fact that Dr. Monheim-Janss's opinion was "based off Plaintiff's [self-]reported symptoms and limitations"; and (5) internal contradiction between Dr. Monheim-Janss's observations of Plaintiff and Dr. Monheim-Janss's ultimate opinion. (Doc. 21 at 8-11, 12-15.)

In reply, Plaintiff reiterates her contention that her coaching and adoption activities are not inconsistent with Dr. Monheim-Janss's opinion and notes that, under the applicable regulations, "the ability to spend time among familiar people or surroundings does not necessarily demonstrate an ability to function socially in a work setting on a regular and

continuing basis." (Doc. 22 at 2-5.)

d. **Analysis**

An ALJ is required to evaluate and weigh every medical opinion in the record. 20 C.F.R. § 404.1527(c). Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675. In contrast, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Here, both sides agree that the "specific and legitimate reasons" standard applies with respect to Dr. Monheim-Janss. (Doc. 19 at 2, 10; Doc. 21 at 11; Doc. 22 at 5.)

Applying this standard, Plaintiff has not established that the ALJ committed error with respect to Dr. Monheim-Janss. One of the ALJ's reasons for discounting Dr. Monheim-Janss's opinion regarding Plaintiff's ability to interact socially with others was it was inconsistent with Plaintiff's youth-basketball coaching activities. In general, inconsistency between a medical opinion and the claimant's activities is a specific and legitimate reason for rejecting that opinion. *See, e.g., Sisco v. Berryhill*, 770 F. App'x 346, 347 (9th Cir. 2019) ("The ALJ properly rejected Dr. Teveliet's opinions based on specific and legitimate reasons, including . . . inconsistency with Sisco's activities."). *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a "conflict with . . . daily activities . . . may justify rejecting a treating provider's opinion"). Here, Plaintiff does not quarrel with this principle as a legal matter and simply argues that, as a factual matter, there was no conflict between Dr. Monheim-Janss's opinion and her coaching activities because the former addressed her ability to interact with strangers on a sustained basis in a work environment while the latter only shed light on her ability to interact with familiar faces on

a short-term basis in a controlled environment.

This argument fails because Dr. Monheim-Janss's opinion was not limited in the manner suggested by Plaintiff. In her statement of medical opinions, Dr. Monheim-Janss stated without qualification that Plaintiff lacked the ability "to appropriately respond to supervisors and criticism" and also lacked the ability "to interact appropriately with the public." (AR 473-74.) Indeed, in one of the corresponding explanations, Dr. Monheim-Janss stated without qualification that Plaintiff "has difficulty controlling her anger around others." (*Id.*) Nor does it appear that Dr. Monheim-Janss was even aware of Plaintiff's work as a basketball coach—in the portion of the examination report summarizing Plaintiff's activities of daily living, there is no discussion of coaching. (AR 470.) Against this backdrop, it was rational for the ALJ to construe Dr. Monheim-Janss's unqualified opinions regarding Plaintiff's inability to respond appropriately to criticism or control her anger around the public and others as inconsistent with Plaintiff's work as a part-time basketball coach, because coaching can rationally be viewed as involving criticism and interaction with the public and others. And "where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Given this conclusion, it is unnecessary to resolve whether the ALJ's other proffered reasons for discounting Dr. Monheim-Janss's opinions were specific and legitimate and supported by substantial evidence. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted).

    2.    <u>Dr. Gordon</u>

        a.    **The Underlying Opinion**

Dr. Gordon examined Plaintiff on August 9, 2016. (AR 455-64.) In his statement of opinions, Dr. Gordon diagnosed Plaintiff with two conditions: (1) chronic low back pain

with sciatica; and (2) epilepsy. (AR 461.)[1] However, as to each condition, Dr. Gordon added that "[t]his condition is managed medically . . . [and] does appear to be stable." (*Id.*) Based on these diagnoses, Dr. Gordon opined that Plaintiff would have various limitations, including a limitation related to lifting and/or carrying ("frequently" lift 10 pounds and "occasionally" lift 20 pounds), a limitation related to standing or walking ("6-8 hours per day in an 8 hour day"), other limitations related to certain other activities (only "frequent[]" balancing, stooping, kneeling, and crouching and "occasional[]" climbing and crawling), and certain environmental restrictions (working around heights, moving machinery, extremes in temperature, chemicals, dusts/fumes or gases, and excessive noise). (AR 461-62.) Finally, in response to the last question in the questionnaire ("If your claimant suffers from severe fatigue and cannot complete an 8 hour day or 40 hour workweek, please comment on what findings you have based this conclusion"), Dr. Gordon wrote the following: "Due to the claimant's documented medical condition of epilepsy it is reasonable to believe that she may suffer from severe fatigue and be unable to complete an 8 hour work day or 40 hour work week." (AR 464.)

### b. **The ALJ's Evaluation**

The ALJ offered the following discussion of Dr. Gordon: "Great weight is assigned to Dr. Gordon's opinion [that Plaintiff] is not precluded from performing all light work. However, great weight is assigned to the reviewing physicians' opinions, but Dr. Gordon's opinion supports the conclusion reached in this decision that [Plaintiff] is not disabled. [¶] Two state agency consultants reviewed [Plaintiff's] medical evidence of record and also offered opinions regarding [Plaintiff'] physical condition in August and September 2016. Both reviewing doctors agreed with Dr. Gordon that [Plaintiff] retains the ability to perform work at a light exertional level with additional postural and environmental limitations." (AR 27.)

---

[1] The report states that Dr. Gordon also diagnosed Plaintiff with unspecified "Psychiatric disorders," but the accompanying explanation states that Dr. Gordon would "defer this diagnosis to any psychological examination portion of the Disability Determination process." (AR 461.)

- 10 -

       c.  **The Parties' Arguments**

Plaintiff argues that the ALJ's treatment of Dr. Gordon's opinion was erroneous because although "[t]he ALJ purported to assign great weight to Dr. Gordon's opinion overall . . . the ALJ did not mention Dr. Gordon's statement about fatigue related to epilepsy and gave no reasons for rejecting this aspect of Dr. Gordon's opinion." (Doc. 19 at 11.) Plaintiff contends this error was harmful because if she "was unable to complete an 8-hour workday or 40-hour work week, then [she] would be unable to complete a normal workday or workweek due to her epilepsy-related fatigue[]." (*Id.*)

The SSA Commissioner seems to offer four arguments in response. (Doc. 21 at 16-17.) First, the SSA Commissioner argues that "Dr. Gordon's speculative statement that Plaintiff 'may' have fatigue that causes her to miss work . . . is inherently vague, as 'it is reasonable to believe' and 'she *may* suffer from severe fatigue' are indicative that this is at most a potential limitation, dependent on the record." The SSA Commissioner elaborates that "'may' means at most a potential limitation and not an inability, and regardless, this statement is not in functional terms." (*Id.* at ) Second, the SSA Commissioner argues that any opinion regarding the presence of disabling fatigue could be properly discounted because it "appears [to be] based solely on Plaintiff's properly discounted subjective statements," "not any objective or supported findings in the record." (*Id.*) Third, the SSA Commissioner argues that any opinion regarding the presence of disabling fatigue was "internally inconsistent" in light of Dr. Gordon's statements elsewhere in the examination report that Plaintiff's epilepsy was stable and medically managed. (*Id.* at 16-17.) Fourth, the SSA Commissioner argues that "[t]he record itself fails to corroborate Plaintiff's interpretation of Dr. Gordon's opinion, in that Plaintiff did not appear to become distracted or fatigued during testing and she denied fatigue or feeling weak at multiple occasions during the relevant period." (*Id.* at 17.)

In reply, Plaintiff accuses the SSA Commissioner of "attempt[ing] to invent a rationale on behalf of the ALJ" and argues that "such post hoc rationalizations . . . run afoul of the bedrock rules of law" requiring administrative review to be limited to the reasons

actually provided by the agency. (Doc. 22 at 5-6.)

#### d. **Analysis**

The Court largely agrees with Plaintiff's arguments regarding the ALJ's treatment of Dr. Gordon's opinion. Although *part* of Dr. Gordon's opinion addressed Plaintiff's limitations related to lifting, carrying, standing, and other activities (and those opined-to limitations would not compel a finding of disability), Dr. Gordon also opined, in the final section of the examination report, that "[d]ue to [Plaintiff's] documented medical condition of epilepsy it is reasonable to believe that [Plaintiff] may suffer from severe fatigue and be unable to complete an 8 hour work day or 40 hour work week." It appears the ALJ simply overlooked this part of Dr. Gordon's opinion in the underlying decision. It is difficult to understand how the ALJ could have assigned "great weight" to Dr. Gordon's opinion when the adoption of the portion of Dr. Gordon's opinion concerning epilepsy-related fatigue would have compelled a finding of disability.

In an effort to salvage the underlying decision, the SSA Commissioner identifies an array of reasons why a hypothetical ALJ could have discounted Dr. Gordon's opinion concerning epilepsy-related fatigue or viewed Dr. Gordon's statements on that topic as too equivocal to qualify as an opinion. The problem with this approach is that the ALJ in this case didn't provide any of those reasons and explanations. *See, e.g., Garrison,* 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citation omitted). Perhaps the ALJ will, on remand, conclude that Plaintiff is not disabled despite Dr. Gordon's statement concerning epilepsy-related fatigue. But it is the ALJ's role in the first instance to decide how that statement should be treated and provide a corresponding explanation. The ALJ's failure to do so here mandates reversal.

## C. The ALJ Did Not Err When Rejecting Plaintiff's Symptom Testimony

### 1. Plaintiff's Symptom Testimony

In her disability report, Plaintiff asserted that she is unable to work because of a seizure disorder, depression, and arthritis. (AR 278.) And in her function report, Plaintiff asserted that her conditions limit her ability to work because she "can't stand or sit in one place to[o] long" and her medicines make her tired and "keep [her] in bed a lot of the time." (AR 304.)

### 2. The ALJ's Evaluation

The ALJ rejected Plaintiff's symptom testimony because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 25.) More specifically, as for Plaintiff's testimony regarding the frequency and severity of her seizures, the ALJ provided the following reasons for rejecting that testimony: (1) it was contradicted by Plaintiff's reports of improvement in the six-month period before August 2016; (2) it was contradicted by the "normal findings" from EEG studies conducted in October/November 2016 and a CT scan conducted in June 2018, (3) Plaintiff admitted that some seizures occurred after she had been non-compliant with medication; and (4) Plaintiff admitted that she is "able to drive four to five times per week which suggests her seizures are well controlled." (*Id.*) Next, as for Plaintiff's testimony regarding back pain, the ALJ provided the following reasons for rejecting that testimony: (1) Plaintiff received "good results" from treatment, including epidural steroid injections; (2) "[d]iagnostic testing has not revealed findings which would suggest [Plaintiff] is more limited than found in this decision"; (3) Plaintiff missed her physical therapy appointments and was eventually "discharged from physical therapy due to non compliance"; (4) "[t]here are inconsistent urine drug screens which were positive for cannabinoids"; and (5) Plaintiff's "use of medication is not what would be expected if she were experiencing disabling pain," because "she has managed her symptoms for a significant time period without medication." (AR 25-26.) Finally, and more broadly, the ALJ stated that Plaintiff's symptom testimony

was contradicted by (1) Plaintiff's activities of daily living, which revealed that Plaintiff "continues to engage in a somewhat normal level of daily activity and interaction," including shopping, doing housework, attending church, working out at the gym, and lifting weights; and (2) the fact that Plaintiff cares for nine children, because "caring for this number of children can be quite demanding." (AR 26.)

### 3. The Parties' Arguments

Plaintiff argues that the ALJ committed error by rejecting her symptom testimony. (Doc. 19 at 11-14.) More specifically, Plaintiff argues that the ALJ (1) "fail[ed] properly to consider the side effects of [her] necessary [seizure] medicine"; (2) "failed to consider whether [her] missed physical therapy appointments or medication doses were due to circumstances beyond her control"; (3) misconstrued the rigors associated with her parenting duties, because some of her children are adults and none are infants; (4) misconstrued the rigors associated with her coaching, because it is "on a very part-time basis"; and (5) made only vague allusions to conflicting medical evidence without specifically explaining why the medical evidence contradicted her testimony. (*Id.*)

In response, the SSA Commissioner argues that the ALJ properly evaluated Plaintiff's symptom testimony and provided clear reasons, supported by substantial evidence, for rejecting it. (Doc. 21 at 17-23.)

In reply, Plaintiff largely repeats (sometimes verbatim) the points made in her opening brief. (Doc. 22 at 6-8.)

### 4. Analysis

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation omitted). When evaluating a claimant's symptom testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.

2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" if the ALJ "provid[es] specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

Applying these standards, Plaintiff has not established an entitlement to relief. As an initial matter, although the ALJ provided an array of detailed reasons for rejecting Plaintiff's symptom testimony, Plaintiff fails to address some of those reasons in her brief. For example, there is no discussion of why the ALJ's discussion of "inconsistent urine drug screens which were positive for cannabinoids" was a legally inadequate reason for discounting Plaintiff's symptom testimony. Nor does Plaintiff address the ALJ's conclusion that Plaintiff's ability "to drive four to five times per week . . . suggests her seizures are well controlled." Thus, even if Plaintiff had established that some of the ALJ's *other* proffered reasons for rejecting her symptom testimony were erroneous, any such error would be harmless. *Carmickle,* 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted).

At any rate, Plaintiff has not established that the ALJ committed error with respect to the reasons discussed in Plaintiff's brief. In particular, the Court finds no error with the ALJ's conclusion that Plaintiff's ability to care for nine children was inconsistent with Plaintiff's symptom testimony. Even if, as Plaintiff states in her brief, none of the children are infants and some are older, it was still rational for the ALJ to conclude that such extensive childcare responsibilities were inconsistent with Plaintiff's testimony. *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

D. **Remedy**

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a

remand of her case for payment of benefits rather than for further proceedings. (Doc. 19 at 14-15.)

The credit-as-true rule only applies where three elements are present. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). First, the ALJ must have "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100-01 (citation omitted). Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

Here, the ordinary remand rule applies. Although the ALJ committed error with respect to the treatment of Dr. Gordon's opinion, further proceedings would be useful to enable the ALJ to address, in the first instance, the portion of Dr. Gordon's opinion touching upon Plaintiff's epilepsy-related fatigue. Additionally, the Court harbors at least some uncertainty as to the outcome of this proceeding upon remand, and the presence of such uncertainty precludes a remand for an award of benefits under *Treichler*.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 8th day of December, 2021.

Dominic W. Lanza
United States District Judge